# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

REG TRANSPORT SERVICES, LLC,

   Plaintiff,                        :      Case No. 2:18-cv-1176

  -vs-                               Judge Sarah D. Morrison
                                     Magistrate Judge Chelsey M. Vascura

DUTCH MILLER CHRYSLER/JEEP/RAM,
*et al.*,
                                       :

   Defendants.

## **OPINION AND ORDER**

This matter is before the Court upon Defendant Dutch Miller Chrysler/Jeep/Ram's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, in the Alternative, for Transfer of Venue (ECF No. 11), Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (ECF No. 12), and Defendant's Reply in Support of its Motion to Dismiss (ECF No. 13). For the reasons that follow, the Court **GRANTS** Defendant's Motion and **TRANSFERS** the case to the United States District Court for the Southern District of West Virginia, Charleston Division.

## I.    FACTUAL BACKGROUND

There is no real dispute as to the facts relating to jurisdiction. Plaintiff Reg Transport Services, LLC ("Plaintiff") has its principle place of business in Fairfield County, Ohio. (Compl., ¶ 2, ECF No. 4). Defendant Dutch Miller Chrysler/Jeep/Ram ("Defendant") is a licensed automobile dealer in West Virginia with its principle place of business in South Charleston, West

1

Virginia.[1] (*Id.* ¶ 3; Def. Ex. A, Wood Affidavit, ¶ 2, ECF No. 11-2). In addition to providing general contact information and the company's history, Defendant's website states that it "proudly serve[s] the Tri-State." (Pl. Ex. 3, Website, ECF No. 12-4).

Defendant has never been an Ohio corporation and has never been licensed or authorized to do business in Ohio. (Wood Aff., ¶ 3). Defendant has never maintained an office in Ohio, employed a sales force in Ohio, maintained an agent for service of process in Ohio, paid taxes in Ohio, employed anyone in Ohio for any purpose, maintained corporate records in Ohio, held an Ohio license, owned or leased personal property in Ohio, or maintained any office, equipment, bank account, telephone number, or other tangible asset in Ohio. (*Id.* ¶ 4). Since Defendant's incorporation in April 2014, most of the dealership's gross revenue and net profits have come from the sale of vehicles to West Virginia residents. (*Id.* ¶ 6). Defendant acknowledges that while it has sold vehicles to residents of other states, including Ohio, revenue and profits from such sales have always been "de minimus." (*Id.*). Regardless, all vehicles sold and leased by Defendant are purchased and delivered to buyers in West Virginia. (*Id.*).

In April 2018, Plaintiff's representative, Shirley Vernon—who had previous experience purchasing from Dutch Miller—reached out to Defendant by telephone to inquire about the purchase of a refrigerated commercial vehicle for Plaintiff's business. (Compl., ¶ 9; Wood Aff., ¶ 7; Pl. Ex. 1, Vernon Affidavit, ¶ 3, ECF No. 12-1). Discussions between the parties resulted in Defendant agreeing to work with a third party suggested by Plaintiff, Thermo King,[2] to upfit a

---

[1] Based on a discrepancy between Mr. Wood's affidavit and the undisputed printout of Defendant's website, it is unclear to the Court whether there is only one dealership location or three. Regardless, there are no locations alleged outside of West Virginia. (*Compare* Def. Ex. A, Wood Aff., ¶ 2, ECF No. 11-2 *with* Pl. Ex. 3, Website, ECF No. 12-4).
[2] Dutch Miller filed a Third Party Complaint against Thermo King on April 22, 2019, approximately four months after they filed the instant Motion.

2018 Dodge Ram Promaster 2500 cargo van with specific FDA compliant refrigeration requirements. (Compl., ¶¶ 9–12; Wood Aff., ¶ 8). Thermo King is a foreign corporation authorized to do business in Virginia. (Wood Aff., ¶ 9).

On April 21, 2018, Plaintiff entered into an installment sale contract to purchase the upfitted van from Defendant at the dealership in West Virginia. (Compl., ¶ 14). According to Plaintiff, Defendant was aware that the van was ultimately going to be used for business in Ohio. (*Id.* ¶ 15). On May 25, 2018, a representative of Plaintiff picked up the upfitted van from the Thermo King facility in Charleston, West Virginia. (Wood Aff., ¶ 12). Shortly after leaving Thermo King, Plaintiff's representative called Defendant to express dissatisfaction with the upfit work. *(Id.)*. According to Plaintiff, the upfit work done was "substandard, shoddy and done in an unworkmanlike manner." (Compl., ¶ 17). Plaintiff alleges this discovery occurred once the upfitted van was back in Ohio. (*Id.*). Upon confronting Defendant about the work done over the phone, Defendant assured Plaintiff it would fix the problems and arranged for Plaintiff to bring the van back down to West Virginia. (*Id.* ¶ 18; Wood Aff., ¶ 13). On May 30, Plaintiff's representative drove the vehicle to Thermo King's facility in West Virginia, but for reasons unknown to Defendant nothing occurred to reconcile the issues. (Wood Aff., ¶ 14).

On September 6, 2018, Plaintiff filed a complaint in the Court of Common Pleas in Fairfield County alleging claims for (1) breach of contract; (2) negligence; (3) fraud and misrepresentation; (4) restitution; and (5) unreasonable delay. (ECF No. 4). On October 3, 2018, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1332. (ECF No. 1). Defendant filed its Answer the next day. (ECF No. 5).

On December 14, 2018, Defendant moved to dismiss the Complaint for lack of personal jurisdiction, or in the alternative, for transfer of this case to the United States District Court for

the Southern District of West Virginia. (ECF No. 11). Plaintiff filed its Memorandum in Opposition on December 23. (ECF No. 12). Defendant filed its Reply on January 6, 2019. (ECF No. 13). Defendant's Motion to Dismiss is now ripe for review.

## II.     STANDARD OF REVIEW

Plaintiff has the burden of proving personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. If the Court rules on a Federal Rule of Civil Procedure 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx. 425, 434 (6th Cir. 2006). Here, neither side has requested further discovery or an evidentiary hearing, and the Court concludes that neither is necessary in order to rule on Defendant's Motion.

When a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and *Theunissen*, 935 F.2d at 1458). Similarly, in the absence of an evidentiary hearing, a court will generally apply a *prima facie* standard weighing the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6*

4

*Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) ("[A] court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal . . . because we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." (internal quotations and emphasis omitted)). But the Court may consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Moreover, where "there does not appear to be any real dispute over the facts relating to jurisdiction, the prima facie proposition loses some of its significance." *Id.* (internal quotations omitted).

In support of its Motion, Defendant filed several contract documents (ECF No. 11-3 through 11-7) and an affidavit of Roger Wood, General Sales Manager of Dutch Miller (ECF No. 11-2). Plaintiff countered with an affidavit of Shirley Vernon, a representative of Reg Transport (ECF No. 12-1), Rebecca Giligan, a former customer of Dutch Miller (ECF No. 12-2), Defendant's affidavit of Roger Wood (ECF No. 12-3), and a printout of Dutch Miller's website (ECF No. 12-4).

## III. ANALYSIS

### A. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). In a diversity action, the law of the forum state is applied to decide whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Because "Ohio's long-arm statute is not coterminous with federal constitutional limits," to establish a *prima facie* case of personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm

statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (internal quotations omitted); *Kauffman Racing Equip., LLC v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010)).

"Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if his conduct falls within the nine bases for jurisdiction listed by the statute." *Conn*, 667 F.3d at 712. In pertinent part, the Ohio long-arm statute provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: . . .
>
> (2) Contracting to supply services or goods in this state; . . .
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

Ohio Rev. Code § 2307.382. Therefore, Plaintiff must make a *prima facie* showing that Defendant satisfies one of these categories. (*See* Pl. Mem. Opp., 8).

**1. Contracting to Supply Goods in Ohio**

"[T]he actual transaction of business *in-state* is a prerequisite to the exercise of long-arm jurisdiction under § 2307.382(A)(2)." *Rosenberg v. ABF Freight System, Inc.*, No. 13CV651, 2014 WL 1308805, at * 5 (S.D. Ohio Mar. 31, 2014) (internal quotations omitted). In other words, § 2307.382(A)(2) only applies where the parties' contract requires the defendant to supply either goods or services *in Ohio*. *Nationwide Ins. Co. v. Hampton Supply Inc.*, 829 F. Supp. 915, 916 fn.1 (S.D. Ohio 1993).

In *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, the court found Ohio's long arm-arm statute satisfied under subsection (A)(2) where the defendant contracted to supply

a vehicle to the Ohio plaintiff, including delivering the vehicle from defendant's place of business in Arizona to Ohio. 943 F. Supp. 825, 829 (N.D. Ohio 1996). By contrast, in *Nicholson v. Jayco, Inc.*, the court held that the same subsection was not satisfied where the Ohio plaintiff negotiated with the defendant by telephone and e-mail to buy an RV and subsequently drove down to the defendant's business in Texas to execute the sales agreement and take delivery of the RV. No. 15CV2010, 2016 WL 5463215, at *5 (N.D. Ohio Sep. 29, 2016); *see also Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) (explaining that a Canadian company arranging a hunting trip to Canada for an Ohio resident by telephone, fax, email, and mail did not provide a factual basis to support that the company contracted to supply any goods or services in Ohio).

Plaintiff argues that the Defendant has "contracted with numerous Ohio residents for the sale or leasing of vehicles." (Pl. Mem. Opp., 8). Even if true, Plaintiff does not allege that Defendant transacted any business *in Ohio*. Nearly identical to the facts in *Nicholson*, Plaintiff negotiated for the sale of the van with Defendant by telephone, signed the contract for the van in West Virginia, and picked up the van in West Virginia. (Wood Aff., ¶¶ 7, 11–12). Contrary to Plaintiff's assertion, the sole fact that Defendant entered into a contract with an Ohio company is not enough to satisfy Ohio's long-arm statute under subsection (A)(2).

   2. **Causing Tortious Injury in Ohio by an Act or Omission Outside of Ohio**

Section 2307.382(A)(4) first requires that the plaintiff establish that the tortious injury alleged occurred in Ohio. *Oasis Corp. v. Judd*, 132 F. Supp. 2d. 612, 620 (S.D. Ohio 2001). According to the Complaint, the alleged injury here is the deficient upfitting of the 2018 Dodge Ram Promaster 2500 cargo van purchased by Plaintiff. (Compl., ¶¶ 1, 19). While Plaintiff alleges that the "shoddy" work was discovered once the van was back in Ohio, there is no dispute that all work performed (or not performed) on the van occurred in West Virginia at either Dutch

7

Miller or Thermo King. (Wood Aff., ¶¶ 11–12). Additionally, all communication from Defendant to Plaintiff regarding the upfit work was made through telephone or email outside of Ohio. (Compl., ¶ 40; Wood Aff., ¶¶ 4, 5, 7–8, 11). Assuming Plaintiff can prove that Defendant was negligent in upfitting the van or fraudulent in representing its ability to upfit the van, the "improper upfit, shoddy workmanship and inability of the [v]an to meet the FDA standards for proper transportation of FDA goods" occurred in West Virginia and the causes of action arose out of such injury in West Virginia. (Pl. Mem. Opp., 2). It is irrelevant for tortious injury purposes that Plaintiff discovered the deficient upfitting in Ohio or suffered further economic consequences as a result of the loss of use of the van in Ohio. *See Black v. Bews*, No. 11CV65, 2011 WL 3812151, at *6 (S.D. Ohio Aug. 5, 2011) ("[A] tortious injury is not considered to have occurred in Ohio simply because a party continued to suffer from the effects of the injury after returning to Ohio." (internal quotations omitted)); *Logue v. Siesta-4-Rent*, No. 05CV132, 2005 WL 1421958, at * 3 (S.D. Ohio June 17, 2005) (explaining that a tortious injury does not occur in Ohio because "some damages for those injuries may have a connection in Ohio").

However, even if the tortious injury did occur in Ohio, Plaintiff has also failed to set forth a *prima facie* showing that Defendant "1) derives 'substantial revenue' from goods used in Ohio; 2) regularly does or solicits business in Ohio; or 3) engages in any other persistent course of conduct in Ohio" as required under § 2307.382(A)(4). *Nicholson*, 2016 WL 5463215 at *6 (internal quotations omitted). "The analysis here mirrors that used to determine 'purposeful availment' for due process purposes." *Perrow v. Grand Canyon Educ., Inc*, No. 09CV670, 2010 WL 271298, at *3 (S.D. Ohio June 30, 2010). While the defendant need not be physically in Ohio for personal jurisdiction to exist under this subsection, the showing "requires more than

8

sporadic contact by the defendant with Ohio." *Id; Nat'l K-9, Inc. v. Nat'l Canine Assoc., Inc.*, No. 09CV608, 2010 WL 2663226, at *3 (S.D. Ohio June 30, 2010).

There is no dispute that Defendant has sold and leased vehicles to Ohio residents. (Wood Aff., ¶ 6; Vernon Aff., ¶¶ 3–5; Pl. Ex. 2, Giligan Affidavit, ¶¶ 3–5, ECF No. 12-2). But Plaintiff does not allege any facts that establish that Defendant derives substantial revenue from such sales. Rather, Plaintiff relies on the same affidavit of Roger Wood, submitted by Defendant, which states: "the vast majority of the dealership's gross revenue and net profits comes from the sale of motor vehicles to residents of West Virginia. While Dutch Miller has sold a few vehicles to residents of other states, including Ohio, the revenue and profits derived from such sales are de minimus . . . ." (*See* Pl. Ex. 3, Wood Affidavit, ¶ 6, ECF No. 12-3).

Further, Plaintiff does not allege any facts sufficient to establish that Defendant regularly does or solicits business in Ohio. Defendant is not an Ohio corporation and is not licensed or authorized to do business in Ohio. (*Id.* ¶ 3). There is no dispute that Defendant does not and has never done any of the following: maintained an office in Ohio, employed a sales force in Ohio, maintained an agent for service of process in Ohio, paid taxes in Ohio, employed anyone in Ohio for any purpose, maintained corporate records in Ohio, held an Ohio license, owned or leased personal property in Ohio, or maintained any office, equipment, bank account, telephone number, or other tangible asset in Ohio. (*Id.* ¶ 4). Moreover, all vehicles sold to Ohio residents have been purchased and delivered to those buyers at the dealership in West Virginia. (*Id.* ¶ 6). Regardless of whether Defendant has repeat customers, like Ms. Vernon, Plaintiff does not allege any facts to support that Defendant has an ongoing business relationship with her or any other Ohio resident. *See Stone v. Twiddy & Co. of Duck, Inc.*, No. 10CV591, 2012 WL 3064103, at *4 (S.D. Ohio July 27, 2012) (explaining that the sale of a home or a short term rental does not

create an ongoing business relationship on its own, even to repeat customers). The lack of substantial revenue also supports that Defendant does not regularly do or solicit business in Ohio. *Nicholson*, 2016 WL 5463215, at *6; *see also Beightler v. Produkte Fur Die Medizin AG*, 610 F. Supp. 847, 850 (N.D. Ohio 2009) (holding that the defendant's revenue from its business dealings with an Ohio company was too low to suggest that it regularly conducted business in Ohio).

The Court is also not convinced that Dutch Miller regularly solicits business from Ohio residents or engages in a persistent course of conduct in Ohio because Defendant's website states that it "proudly serve[s] the Tri-State." (Pl. Mem. Opp., 7). Operation of a website can constitute purposeful availment of the privilege of acting in Ohio if the website is interactive to a degree that reveals its specific intent to interact with Ohio residents. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). For example, in *Wood v. 1-800-Got-Junk?, LLC*, this Court held that the defendant's website satisfied § 2307.382(A)(4) of Ohio's long-arm statute where it allowed Ohio residents to book services with other Ohio franchisees and advertised franchise opportunities in Ohio. No. 06CV117, 2007 WL 895008, at * 4 (S.D. Ohio Mar. 27, 2007); *see also Perrow,* 2010 WL 271298, at *4–5 (finding Ohio's long-arm statute satisfied where defendant's website allowed Ohio residents to enroll and participate in online classes). On the other hand, "[p]ersonal jurisdiction cannot be asserted over a defendant with a merely passive website that does nothing more than provide information to users in the forum state." *513 Ventures, LLC v. PIV Enters., Inc.*, No. 11CV573, 2012 WL 995277, at *3 (S.D. Ohio Mar. 23, 2012); *see also Logue*, 2005 WL 1421958, at *4 (explaining that where a website is accessible to Ohio residents but completely passive, the website alone cannot confer long-arm jurisdiction over nonresident defendants). Moreover, "even a non-passive website, one by which the defendant welcomes

business from the forum state, does not establish purposeful availment without additional allegations that a commercial connection in fact exists between the business and the forum state." *513 Ventures,* 2012 WL 995277, at *4.

According to Plaintiff's Exhibit 3,[3] Defendant's website provides basic information about the dealership's South Charleston location, a brief family history of the store, and several West Virginia telephone numbers. (Website, ECF No. 12-4). Although not raised by Plaintiff, Defendant does concede in its Reply that Dutch Miller's website also allows the public to view Defendant's inventory and submit questions and information for financing. (Def. Reply, 5). But Defendant's website does not permit customers to purchase vehicles, submit payments, enter into any contracts, or actually secure financing. (Def. Reply, 5); *see See, Inc. v. Imago Eyewear Pty, Ltd.,* 167 Fed. Appx. 518, 523 (6th Cir. 2006) (noting that an otherwise passive website that provides the means to contact the defendant through an on-line form is insufficient to establish personal jurisdiction over the defendant); *Premium Balloon Accessories, Inc. v. Control Plastics*, 113 Fed. Appx. 50, 51 (6th Cir. 2004) (finding no personal jurisdiction over the defendants under Ohio's long-arm statute where the defendants' website, which listed its products and provided an order form for download, was accessible to Ohio residents but where purchases could not be made through the website and the defendants did not have an office or phone number in Ohio); *Wargo v. Lavandeira*, No. 08CV2035, 2008 WL 4533673, at *7 (N.D. Ohio Oct. 3, 2008) (holding that the defendants' website's level of interactivity did not establish personal jurisdiction over defendants where it allowed users to post comments and information but did not sell any goods or services through the website). *But cf. Morel Acoustic, Ltd. v. Morel Acoustics*

---

[3] Defendant does not dispute that Plaintiff's Exhibit 3 (ECF No. 12-4) is an accurate screenshot of its website. (Def. Reply, 3, ECF No. 13).

*USA, Inc.*, No. 04CV348, 2005 WL 2211306, at *7 (S.D. Ohio Sep. 7, 2005) (finding the defendant's website sufficiently interactive where the website offered to sell goods, provided order forms to download, provided an e-mail link to place orders, provided payment options and shipping information, and provided specifications and prices for products while inviting customers to place orders).

Other than calling Defendant's website "non-passive" in its Memorandum (7, ECF No. 12), Plaintiff does not allege that Defendant's website is interactive or that any Ohio residents, including Plaintiff, learned of Defendant through its website or used the website in any way. In other words, Plaintiff makes no factual allegations that Dutch Miller's website generated any business between Defendant and Ohio. *See Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675, 678 (6th Cir. 2005) (finding no personal jurisdiction over the defendant where the plaintiff did not allege any interaction or exchange of information occurred between the defendant and Ohio residents through the defendant's website); *Tewart Enterprises, Inc. v. Dawson*, No. 05CV30, 2007 WL 1114819, at * 6 (S.D. Ohio Apr. 13, 2007) ("Whether the Defendants here held themselves out as welcoming business from Ohio is immaterial because the Plaintiff makes no allegation that the defendant's website or letter have generated any business connection between the defendant[s] and Ohio."). Therefore, even taking into account Defendant's concessions, the fact that Defendant's website indicates that it serves the "Tri-State"[4] without more, does not specifically target Ohio residents in such a way that Defendant regularly solicits business or engages in a persistent course of conduct in Ohio. *See Beightler*, 610 F. Supp. at 851 (noting that a Kentucky doctor placing a listing in an Ohio telephone directory in the form of a small

---

[4] For purposes of the analysis, the Court presumes, as Plaintiff suggests, that the "Tri-State" area Defendant refers to is comprised of Kentucky, Ohio, and West Virginia. (Pl. Mem. Opp., 7).

advertisement did not rise to the level of regularly soliciting business in Ohio) (citing *Estate of Poole v. Grosser*, 731 N.E.2d 226 (Ohio Ct. App. 1999)).

Finding no basis for personal jurisdiction under Ohio's long-arm statute, it is unnecessary to analyze jurisdiction under the Due Process Clause. *Conn*, 667 F.3d at 711–12; *Brunner*, 441 F.3d at 467.

### B. Venue

As an alternative to dismissal, Defendant moves for transfer of venue to the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1404(a). (Def. Mot., 15–16). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." However, "a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993). Instead, 28 U.S.C § 1406(a) "provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought." *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). Therefore, this Court may *sua sponte* order that a case be transferred rather than dismissed pursuant to § 1406, even where the Court does not have personal jurisdiction over the defendant. *Thornton v. Walter*, 774 F.2d 1164 (Table), 1985 WL 13711, at *2 (6th Cir. Sep. 17, 1985); *Taylor v. Love*, 415 F.2d 1118, 1120 (6th Cir. 1969); *Mid-America Gutters v. Thompson Creek Window Co.*, No. 11CV843, 2012 WL 3224148, at *7 (S.D. Ohio Aug. 6, 2012) ("While Defendants brought their motions to transfer in the alternative in the event the motions to dismiss were denied, this Court may *sua sponte* order that a case be transferred, rather than dismissed pursuant to Section 1406.").

13

Under § 1406(a), a district court with a case "laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." There is no dispute that this case could have been brought in the Southern District of West Virginia. Additionally, on July 23, 2019, Third Party Defendant Thermo King filed their own Motion to Dismiss Dutch Miller's Third Party Complaint for Lack of Personal Jurisdiction, or in the Alternative, for Transfer of Venue (ECF No. 35) to the Southern District of West Virginia.

The Court finds that to dismiss the Complaint would only result in unnecessary duplication of fees and costs. In this case, process has been served, some preliminary discovery has undoubtedly been completed, and a preliminary pretrial conference has been held (ECF No. 10). Defendants will suffer no prejudice from the transfer as they themselves sought transfer in the event that the Court did not dismiss Reg Transport or Dutch Miller's claims. Finally, the interests of justice favor transfer. Accordingly, transfer to the Southern District of West Virginia, as opposed to dismissal is the proper course of action.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, in the Alternative, for Transfer of Venue (ECF No. 11) is **GRANTED** to the extent that it seeks transfer of venue. This matter is hereby **TRANSFERRED** to the United States District Court for the Southern District of West Virginia, Charleston Division. Third Party Defendant Thermo King's Motion to Dismiss Dutch Miller's Third Party Complaint for Lack of Personal Jurisdiction, or in the Alternative, for Transfer of Venue (ECF No. 35) is **DENIED** as **MOOT**. The Clerk is **DIRECTED** to **TERMINATE** this case from the

docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

                                               /s/ Sarah D. Morrison
                                              SARAH D. MORRISON
                                              UNITED STATES DISTRICT JUDGE